E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KEDAR S. BHATIA (Cal. Bar No. Pending)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4442
     E-mail:   kedar.bhatia@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>MARK WILLIAM ANTEN,"<br><br>              Defendant. | No. 2:24-cr-2-WLH<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT MARK WILLIAM ANTEN'S MOTION FOR RECONSIDERATION OF DETENTION |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kedar S. Bhatia, hereby files its opposition to defendant Mark William Anten's motion for reconsideration of detention, dated February 6, 2024.

///

///

///

///

///

///

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

DATED: February 14, 2024     E. MARTIN ESTRADA
                             United States Attorney

                             MACK E. JENKINS
                             Assistant United States Attorney
                             Chief, Criminal Division

                             ___/s/_____
                             KEDAR S. BHATIA
                             Assistant United States Attorney

                             Attorneys for Plaintiff
                             UNITED STATES OF AMERICA

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION....................................................1

II.   STATEMENT OF FACTS.............................................1

III.  ARGUMENT.......................................................4

     A.    The Defendant Is Not Entitled To Relitigate The
           Threshold Question Of Whether A Detention Hearing Is
           Warranted.................................................4

     B.    The Court May Consider Both Risk Of Danger To The
           Community And Risk Of Flight Or Non-Appearance...........7

     C.    Detention Is Warranted Based On Risk Of Danger To The
           Community And Risk Of Flight Or Non-Appearance..........10

IV.   CONCLUSION....................................................13

i

**TABLE OF AUTHORITIES**

**Cases**

*Cerrato v. San Francisco Cmty. Coll. Dist.*,
    26 F.3d 968 (9th Cir. 1994) ..................................... 9

*United States v. Byrd*,
    969 F.2d 106 (5th Cir. 1992) ..................................... 9

*United States v. Himler*,
    797 F.2d 156 (3rd Cir. 1986) ..................................... 9

*United States v. Kouyoumdjian*,
    601 F. Supp. 1506 (C.D. Cal. 1985) ............................. 8

*United States v. Morales-Cisneros*,
    No. 21-cr-2377-TUC-JCH-LCK, 2021 U.S. Dist. LEXIS 219421
    (D. Ariz. Nov. 12, 2021) ...................................... 9

*United States v. Motamedi*,
    767 F.2d 1403 (9th Cir. 1985) ........................... 5, 7, 8

*United States v. Ploof*,
    851 F.2d 7 (1st Cir. 1988) ..................................... 9

*United States v. Powers*,
    318 F. Supp. 2d 339 (W.D. Va. 2004) ........................... 5

*United States v. Twine*,
    344 F.3d 987 (9th Cir. 2003) ............................... 9-10

*United States v. Walker*,
    808 F.2d 1309 (9th Cir. 1986) ................................. 8

*United States v. White*,
    No. 4:18-mj-71386-MAG, 2018 WL 5291989
    (N.D. Cal. Oct. 19, 2018) ........................... 4-5, 5, 7

**Statutes**

18 U.S.C. § 875 ............................................... 3

18 U.S.C. § 3142 ...................................... 4, 5, 6, 9

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3       Defendant Mark William Anten ("defendant") should remain

4  detained pending trial because he poses a danger to the community and

5  presents a serious flight risk. Defendant was indicted on counts

6  related to two threats he made against law enforcement officers,

7  threatening to "UNABOMB THE LOS ANGELES FBI HQ" and go on a "mass

8  murder spree." The latter threat was accompanied by a photograph of

9  an internet search for "how to make a dirty bomb." These threats were

10  part of a weeks-long campaign of harassing and threatening behavior

11  towards agents of the Federal Bureau of Investigation. In addition to

12  this obvious danger to other persons and the community, defendant has

13  a history of failure to comply that demonstrate a risk of non-

14  appearance. Because established Ninth Circuit case law permits a

15  detention hearing under these circumstances, and because defendant's

16  proposed bond conditions are insufficient to mitigate defendant's

17  danger to the community and risk of non-appearance, defendant's

18  motion for pretrial release should be denied.

19

**II.   STATEMENT OF FACTS**

20       Between July 2023 and his arrest in December 2023, defendant

21  sent numerous threatening communications to the FBI, including the

22  email communications described below that reference bombing the FBI

23  headquarters in Los Angeles.[1] His threatening messages frequently

24  referenced his similarities to the "Unabomber," domestic terrorist

25  Theodore Kaczynski.

26

27  _____

[1] In support of its argument, the government relies on the facts set

forth in the Complaint (Dkt. 1) and the Pretrial Report, dated

28  December 21, 2023.

1

1    On November 2, 2023, Anten emailed FBI agents saying he

2    "embrace[d]" that he was voted most likely in his graduating class to

3    become the next Unabomber, listed similarities between himself and

4    the Unabomber, proclaimed that he was working on a manifesto, and

5    signed his email "Unabomber." Id. ¶¶ 19-20.

6    On November 20, 2023, two FBI Task Force Officers ("TFOs")

7    interviewed Anten in front of his residence. Id. ¶¶ 24-25. During the

8    interview, Anten admitted to sending the previous communications. Id.

9    ¶ 24. The TFOs admonished Anten to stop contacting agents and to

10   instead seek legal counsel if he felt he had been wronged by the FBI.

11   Id. ¶ 25. Anten said he may not be able to stop sending messages. Id.

12   Despite the admonition, Anten's threatening conduct continued

13   and escalated. On December 5, 2023, for example, Anten sent a string

14   of threatening emails to FBI agents. In one email with the subject

15   "It's Only a Matter of Time," Anten closed the email with, "I don't

16   care about death or SuperMax," a reference to high-security prison in

17   Florence, Colorado, which is also where Kaczynski served much of his

18   term of imprisonment. Id. ¶¶ 7 n.1, 9. In another email with the

19   subject "Poor Scared Agent [Last Name]," Anten said, "I AM THE

20   UNABOMBER" and "I WILL UNABOMB THE LOS ANGELES FBI HQ." Id. ¶ 26(a).

21   In this email, ANTEN said, "I am supposed to be in Beverly Hills

22   tomorrow for a meeting. Id. I will swing by your office if there is

23   time." Anten ended his email with, "[t]his ain't over," and signed it

24   "UNABOMBER." Id.; see also id. ¶ 26(b) (other emails referencing the

25   Unabomber).

26   On December 6, 2023, shortly after midnight, Anten emailed

27   agents, "I can go on a mass murder spree. In fact, it would be very

28   explainable by your actions." Id. ¶ 26(c). He closed this email with,

2

1  "You ain't getting away with this one," and signed it "SuperMax or
2  Death." Id. ¶¶ 10, 26(c). Anten then sent another email that said,
3  "My Google Search," which included an image depicting the results of
4  a Google internet search for "how to make a dirty bomb." Id. ¶ 27.

5       On December 6, 2023, Anten went to the FBI Los Angeles
6  Headquarters building. Id. ¶ 28. Later that day, Anten emailed agents
7  confirmation that he went to the FBI Los Angeles Headquarters
8  building and will continue to do so. Id. ¶ 30. Surveillance footage
9  confirmed his presence. Id. ¶ 29.

10      Apart from defendant's threats to the FBI, there is an order of
11 protection against the defendant that restrains him from contact with
12 his ex-wife. Pretrial Report at 2, 3-4.

13      On or about December 21, 2023, Anten was arrested at his home
14 based on the charge in a criminal complaint. See Dkt. 1. At his
15 initial appearance that day, he was ordered detained after a
16 contested hearing. Dkts. 5, 6. The Court found that detention was
17 warranted under both the risk of danger and the risk of flight. Dkt.
18 6 at 2. The Probation Office also took the position that detention
19 was appropriate due to the risk of danger and the risk of flight.
20 Pretrial Report at 5.

21      On or about January 3, 2024, the grand jury returned an
22 indictment charging him with two counts of threatening
23 communications, in violation of 18 U.S.C. § 875(c). Dkt. 11. The
24 charges relate specifically to defendant's December 5 email where he
25 stated he "WILL UNABOMB THE LOS ANGELES FBI HQ" (Count One), and his
26 December 6 email where he said he "can go on a mass murder spree" and
27 attached a photograph depicting an internet search for "how to make a
28 dirty bomb" (Count Two). Id.

3

1    **III.  ARGUMENT**

2         Defendant's procedural arguments about the requirements of the

3    Bail Reform Act run contrary to binding case law. His substantive

4    arguments seeking to minimize his risk of danger to other persons and

5    the community and his risk of non-appearance are equally flawed.

6    Accordingly, the Court should deny his motion for pretrial release.

7         **A.    The Defendant Is Not Entitled To Relitigate The Threshold**

8              **Question Of Whether A Detention Hearing Is Warranted**

9         Contrary to defendant's argument, the Bail Reform Act does not

10   require the Court to reopen the threshold question of whether a

11   detention hearing should be held. In any event, the government has

12   put forth enough evidence to demonstrate that a detention hearing –

13   and detention itself – is warranted. The Bail Reform Act, 18 U.S.C.

14   § 3142, governs when a defendant may be detained pending trial.

15   Section 3142(f) calls for a court to first decide whether a detention

16   hearing is at all warranted. A detention hearing is warranted "upon

17   motion of the attorney for the Government or upon the judicial

18   officer's own motion, in a case that involves (A) a serious risk that

19   such person will flee; or (B) a serious risk that such person will

20   obstruct or attempt to obstruct justice, or threaten, injure, or

21   intimidate, or attempt to threaten, injure, or intimidate, a

22   prospective witness or juror." 18 U.S.C. § 3142(f)(2).

23        The threshold to trigger a detention hearing under § 3142(f) is

24   very low. One district court within the Ninth Circuit has observed

25   that, "[b]ecause of the immediacy with which the [detention] hearing

26   should happen, the government or Court need only express their belief

27   that the defendant poses a serious risk of flight for the hearing to

28   commence." <u>United States v. White</u>, No. 4:18-mj-71386-MAG, 2018 WL

                                       4

5291989, at *4 (N.D. Cal. Oct. 19, 2018); see also United States v. Powers, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004) (explaining that the standard to trigger a detention hearing occurs when the "United States or the court believes there is a serious risk of flight"). Moreover, because the standard of proof to detain a defendant on grounds of risk of non-appearance is by a preponderance of evidence, see United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985), it follows that the standard of proof to demonstrate the government's entitlement to a hearing based on flight risk must necessarily be lower than a preponderance. In sum, "the belief that entitles the government to the detention hearing is ultimately a very low threshold." White, 2018 WL 5291989, at *4.

The Bail Reform Act also makes clear that whether a detention hearing should be held under § 3142(f) is an issue that is decided at the time of defendant's first initial appearance, not one that is revisited every time the hearing is reopened when bail resources become available. Section 3142(f) begins by stating that a court "shall hold a [detention hearing]" if certain conditions are met, including a showing that defendant is a serious flight risk. The section then goes on to state that, if those conditions are met, "[t]he hearing shall be held immediately upon the person's first initial appearance before the [court] . . . ." 18 U.S.C § 3142(f) (emphases added). No language in the Bail Reform Act mandates that the government or the court reestablish that a detention hearing is warranted under § 3142(f) every time a defendant requests to reopen the hearing based on the availability of new bail resources. When a detention hearing is reopened, the Bail Reform Act requires the court to consider a defendant's detention (based on danger and flight),

5

regardless of whether the government (or the court) can establish
that a detention hearing is warranted under § 3142(f). See 18 U.S.C.
§ 3142(f) ("The hearing may be reopened . . . [based on new
information] that has a material bearing on the issue of
[nonappearance and danger].").[2] As defendant acknowledges, he can
find no case law interpreting the statute the ways he proposes.
Motion at 3.

Regardless, there is ample evidence demonstrating that a hearing
is warranted based on defendant's serious risk of non-appearance and
the serious risk of witness intimidation and other acts obstructing
justice. See 18 U.S.C. § 3142(f)(2)(A) & (B). The defendant has not
complied with even the most clear directives: he ignored law
enforcement's instruction not to continue sending threatening
messages. The protective order against him by his ex-wife also
carries the strong inference that he was unwilling or unable to
comply with ordinary rules of safe contact. Furthermore, the
defendant is now facing a serious punishment for his conduct,
escalating his risk of flight. He has already demonstrated that he is
willing to run a campaign of threats against law enforcement officers
and there is a meaningful risk of that campaign continuing now that
defendant has been charged with serious federal crimes. These facts

---

[2] Defendant additionally argues that because the Bail Reform Act
allows the detention hearing to be reopened "before . . . a
determination [has been made] by the judicial officer," this somehow
means that the government must reestablish that a hearing is
warranted when the hearing is reopened by defendant. (Dkt. 44 at 8.)
Nothing about the aforementioned language from the Bail Reform Act
calls for such a result. Rather, the meaning of the language is
unremarkable and straightforward: a defendant may request to reopen a
detention hearing, either before or after the court has decided the
issue of defendant's pretrial detention.

1    are more than sufficient to prompt a detention hearing under

2    § 3142(f)(2)(A) and (B). See White, 2018 WL 5291989, at *4.

3         **B.    The Court May Consider Both Risk Of Danger To The Community**

4              **And Risk Of Flight Or Non-Appearance**

5         Since a detention hearing is warranted, the Court may consider

6    the risk of danger to the community and the risk of flight. Once a

7    detention hearing is warranted under § 3142(f), § 3142(g) provides

8    for the "[f]actors to be considered" at such a detention hearing:

9         (g) Factors to be considered.--The judicial officer shall,
     in determining whether there are conditions of release that
10   will reasonably assure the appearance of the person as
     required and the safety of any other person and the
11   community, take into account the available information
     concerning (1) the nature and circumstances of the offense
12   charged, . . . ; (2) the weight of the evidence against the
     person; (3) the history and characteristics of the person .
13   . . ; (4) the nature and seriousness of the danger to any
     person or the community that would be posed by the person's
14   release.

15   Id. Likewise, § 3142(e)(1) states that after a hearing prompted by

16   § 3142(f) – regardless of the subjection – the court shall order

17   detention if "the judicial officer finds that no condition or

18   combination of conditions will reasonably assure the appearance of

19   the person as required and the safety of any other person and the

20   community."

21        In the context of a detention hearing, the Ninth Circuit has

22   held on several occasions that a court may detain a defendant based

23   on dangerousness alone. In United States v. Motamedi, the circuit

24   expressly stated that the Bail Reform Act "permits the pretrial

25   detention of a defendant without bail where it is demonstrated either

26   that there is a risk of flight or no assurance that release is

27   consistent with the safety of another person or the community." 767

28   F.2d 1403, 1406 (9th Cir. 1985) (emphases added). Later, the Ninth

                                    7

1   Circuit affirmed the constitutionality of pretrial detention based on

2   dangerousness alone in United States v. Walker, 808 F.2d 1309, 1311

3   (9th Cir. 1986). See also United States v. Kouyoumdjian, 601 F. Supp.

4   1506, 1509 (C.D. Cal. 1985)).

5       Defendant's narrow reading of the Bail Reform Act is contravened

6   by the text and purpose of the statute. By the statute's own terms,

7   one section governs when a detention hearing may be triggered

8   (§ 3142(f)) and wholly separate sections, with separate factors,

9   determine a court's consideration at that hearing (§§ 3142(e)(1),

10  (g)). Defendant's reading would disregard the language of

11  § 3142(e)(1) that requires the court to order detention in a hearing

12  prompted by § 3142(f) if the court "finds that no condition or

13  combination of conditions will reasonably assure the appearance of

14  the person as required and the safety of any other person and the

15  community." It would lead to an absurd result if a detention hearing

16  prompted by any one of the various § 3142(f) triggers could only

17  include a discussion of that one trigger. Indeed, that would

18  effectively read § 3142(g) out of the statute.

19      Artificially limiting the scope §§ 3142(e)(1) and (g) based on

20  the way a detention hearing is triggered would require the court to

21  add language and mechanics to the Bail Reform Act that simply are not

22  there. It would constitute a substantial judicial refashioning of a

23  well-worn statute. The Ninth Circuit's holdings in Motamedi, 767 F.2d

24  at 1406, and Walker, 808 F.2d at 1311, support the conclusion that

25  the Court's statutory authority to detain a defendant based on the

26  risk of danger to other persons and the community does not disappear

27  simply because a detention hearing was prompted by one factor instead

28  of another.

Defendant's citation to <u>United States v. Twine</u>, 344 F.3d 987 (9th Cir. 2003), is misplaced. In a single passage within a short <u>per curiam</u> opinion, the Ninth Circuit in <u>Twine</u> stated, "[w]e are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the act would render meaningless 18 U.S.C. § 3142(f)(1) and (2)." <u>Id.</u> at 987. Given <u>Twine</u>'s exclusive focus on the threshold question of when a detention hearing may be held, <u>Twine</u> stands for the correct (and unremarkable) proposition that a defendant cannot be detained based on danger unless a detention hearing is warranted in the first place pursuant to § 3142(f). This is evidenced by the <u>Twine</u> court "hold[ing] that 18 U.S.C. § 922(g)-felon in possession of a firearm-is not a crime of violence for purposes of the Bail Reform Act," which impacted whether a detention hearing as automatically triggered by § 3142(f)(1)(A). <u>Id.</u> at 988.[3] <u>Twine</u> did not overrule the circuit's prior decisions in <u>Motamedi</u> and <u>Walker</u> interpreting the factors that may be considered <u>at</u> the evidentiary hearing -- something only an en banc panel can do.

---

[3] The fact that <u>Twine</u> was focused on <u>when</u> a detention hearing may be triggered (not what factors may be considered at the hearing) is strengthened by the subsequent history of that case. After the panel's short per curiam opinion, the Ninth Circuit ordered the parties to brief whether the case should be reheard en banc, particularly asking the parties to address (1) "[w]hether the Bail Reform Act provides for a detention hearing in a case that 'involves a crime of violence' as distinguished from a case where the 'charged offense' is a crime of violence"; and (2) "[w]hether felon in possession of a firearm is a crime of violence for purposes of the Bail Reform Act." 353 F.3d 690. After the parties submitted their supplemental briefing, the Ninth Circuit denied rehearing en banc. 362 F.3d 1163.

9

1    <u>Cerrato v. San Francisco Cmty. Coll. Dist.</u>, 26 F.3d 968, 972 n.15

2    (9th Cir. 1994).[4]

3         The passage cited by defendant from <u>Twine</u> does not mean what he

4    hopes it does. The passage in <u>Twine</u>, which is at most deeply

5    ambiguous, does not substantially re-write the Bail Reform Act,

6    requiring the Court to ignore parts of § 3142(e)(1) and (g), and it

7    does not reverse prior Ninth Circuit decisions. The Court should

8    evaluate both the risk of danger and the risk of non-appearance in

9    determining whether detention is appropriate.

10        **C.   Detention Is Warranted Based On Risk Of Danger To The**

11             **Community And Risk Of Flight Or Non-Appearance**

12        For the reasons set forth above, the Court can and should

13   consider both the risk of danger to other persons and the community

14   and the defendant's risk of flight or non-appearance. Under both

15

16

---

17   [4] To support his argument that <u>Twine</u> was a sea-change in interpreting
     the Bail Reform Act, defendant cites two non-binding opinions from
18   the twenty years since <u>Twine</u> was decided: <u>United States v. Nwabueze</u>,
     No. 2:10-cr-411-MMM (C.D. Cal. June 28, 2010), Dkt. 36, and <u>United</u>
19   <u>States v. Schoepflin</u>, 2:22-cr-121-FMO-MAR (C.D. Cal. May 19, 2022),
     Dkt. 51 (citing <u>Nwabueze</u>). For the reasons set forth above, the
20   government respectfully submits that these two cases incorrectly
     interpret one passage in the already short <u>per curiam</u> opinion in
21   <u>Twine</u>. The cases cited in <u>Twine</u> contain various holdings and dicta,
     meaning they shed little light on the intent of the Court in <u>Twine</u>,
22   but they are together consistent with the narrow reading of <u>Twine</u>.
     <u>See</u> <u>United States v. Byrd</u>, 969 F.2d 106, 110 (5th Cir. 1992); <u>United</u>
23   <u>States v. Ploof</u>, 851 F.2d 7, 11 (1st Cir. 1988); <u>United States v.</u>
     <u>Himler</u>, 797 F.2d 156, 159 (3rd Cir. 1986). Other courts have
24   struggled with the vague language in <u>Twine</u> and not all have adopted
     the position in <u>Nwabueze</u> and <u>Schoepflin</u>. <u>See, e.g.</u>, <u>United States v.</u>
25   <u>Morales-Cisneros</u>, No. 21-cr-2377-TUC-JCH-LCK, 2021 U.S. Dist. LEXIS
     219421, at *6 n.2 (D. Ariz. Nov. 12, 2021) (noting split among courts
26   interpreting <u>Twine</u>, possibility of absurd results from defendant's
     reading of the case, and declining to decide the issue).
27

28

                                     10

elements, detention is warranted. Furthermore, defendant's proposed bail conditions are inadequate.

The defendant poses a serious risk of danger to other persons and the community. Defendant made serious, persistent threats to FBI agents. See generally Complaint ¶¶ 7-30. He frequently compared himself to Ted Kaczynski, a well-known domestic terrorist who mailed bombs to his victims, and threatened to "unabomb" the FBI office in Los Angeles. He demonstrated his intent to carry through with his threats by visiting the FBI office, telling his victims about his visit, and sending a photograph of an internet search for "how to make a dirty bomb." The restraining order against him shows that he is a threat to not just the public and the FBI agent-victims, but also to individuals in his personal life.

In the Motion, defendant minimizes the conduct underlying the instant case, saying he "has never been violent toward anyone" and only "sent many emails to the FBI, but none of them were intended as threats." Motion at 11. Defendant badly mistakes the true harm from his threatening conduct. His conduct put agents at fear for their safety and the safety of their co-workers and families. The FBI must (correctly) expend resources investigating and evaluating threats like defendant's. Defendant's efforts to minimize his conduct show that even now -- in pretrial detention -- defendant does not appreciate the seriousness of his conduct. Nor did the defendant heed the FBI's prior warning to hire a lawyer for any perceived wrongs, rather than sending threatening messages. Defendant's release would undoubtedly pose a risk of danger to other persons or the community.

Defendant also poses a serious risk of non-appearance. The defendant flouted law enforcement's instruction not to continue

1  sending threatening messages. He even acknowledged his inability to
2  control his behavior, telling officers "that he may not be able to
3  stop sending messages." Complaint ¶ 25. That honesty does not
4  mitigate the threat posed by defendant. Rather, it demonstrates that
5  he knows he may not be able to comply with clear instructions and a
6  complete lack of self-control. His ex-wife's protective order also
7  carries the inference that he was unwilling or unable to comply with
8  ordinary rules of safe contact with her, such that a court order was
9  required. Given the defendant's conduct, the Could has no reason to
10  believe the typical means of ensuring appearance – bail conditions,
11  bond, and pretrial supervision – will have any effect on this
12  defendant.

13      Given the nature of his crimes – threatening and menacing
14  conduct, there are no conditions or combination of conditions that
15  could reasonably assure the safety of other persons and the community
16  or defendant's appearance at future proceedings. Defendant proposes
17  to be released subject to a bond of $25,000, signed by his father,
18  along with mental health treatment and drug testing. Even if any bail
19  conditions could meet the requirements of § 3142(f), these conditions
20  fall miles short. Defendant has shown a disregard for clear
21  admonishments from law enforcement and knowingly made threats to
22  agents. There is no reason to believe that he will be bound by
23  pretrial conditions or even the risk of a forfeited bond. At
24  defendant's initial appearance, the Court already determined that
25  defendant was a danger to the community and a risk of non-appearance,
26  Dkt. 6, and the bail package proposed by defendant falls far short of
27  upsetting that ruling.

28

Even the most restrictive conditions of home imprisonment would not prevent defendant from communicating with victims. And if he were barred from electronic communications, he could still carry out his threat to "unabomb" the FBI office through the mail. For the same reason, no conditions would reasonably assure his appearance at future proceedings.

\*   \*   \*

The defendant made his threats knowing that they could lead to serious consequences. He closed one email threat telling agents "I don't care about death or SuperMax." Complaint ¶ 9. For a defendant who "doesn't care" about incarceration or more serious consequences, there are simply no bail conditions that would reasonably assure the safety of other persons or the community, or reasonably assure his appearance at future proceedings.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's Motion for Pretrial Release.